ROBERT E. ALLEN *vs.* MASSACHUSETTS PAROLE BOARD.

Suffolk. April 3, 1967. — April 28, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & REARDON, JJ.

*Parole. Imprisonment.*

The provision of G. L. c. 127, § 129, as amended by St. 1965, c. 884, § 3, that a paroled prisoner returned to a correctional institution for violation of parole ''shall not receive deductions . . . for any of the first six months after'' his return means not only that deductions are not to be earned during the six months but also that deductions based on the portion of the sentence, if any, remaining upon the expiration of the six months are not to be credited until their expiration.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on January 18, 1967.

The case was reserved and reported by *Cutter, J.*

*Willie J. Davis,* Assistant Attorney General, for the respondent.

*Michael R. Pizziferri (Joseph A. Todisco* with him) for the petitioner.

WILKINS, C.J.   This petition for a writ of habeas corpus in the County Court has been reserved and reported by the single justice on the petition, the respondent's return, a statement of agreed facts, the single justice's findings, rulings, order for judgment in favor of the petitioner, and order staying execution of sentence and admitting the petitioner to bail.

In the petition the petitioner alleges that he is illegally held at the Massachusetts Correctional Institution at Walpole.   On September 1, 1962, he commenced serving a sentence of five to seven years for armed robbery.   On July 17, 1965, he was released on parole.   On September 8, 1965, his parole was revoked, and on September 24, 1965, he was returned to prison.   On May 16, 1966, he was again released on parole.   On August 16, 1966, that parole was revoked for violation of its conditions.   On September 1, 1966, he was again returned to Walpole, where he was confined until January 30, 1967, when he was admitted to bail.

The petition alleges that at the time of the last return to prison he had forty-one days of sentence remaining; that if he had been given the benefit of all deductions for good conduct and for blood donations, already earned, he would have been discharged on October 12, 1966; that on that date, the petitioner was informed that, by order of the respondent board, he was to serve an additional six months because of St. 1965, c. 884, § 3, amending G. L. c. 127, § 129; and that his sentence would expire on February 28, 1967.

The title of c. 884, is, "An Act abolishing deductions from sentence for good conduct in the case of certain offenders and reducing such deductions in the case of violators of parole."   Section 3 added the following new sentence to

the last paragraph of c. 127, § 129: "A prisoner released on parole by the parole board, who has failed to observe all the rules of his parole and has been returned to a correctional institution for the violation of his parole, shall not receive deductions described in this section for any of the first six months after he is returned to the correctional institution."

On March 2, 1966, an opinion of the then Attorney General in reference to the words in § 3, "shall not receive deductions . . . for any of the first six months after he is returned to the . . . institution," stated: "A literal reading of this language indicates that the Legislature sought only to deprive the prisoner of good conduct credits which might possibly accrue during the six-month period subsequent to his return to the institution. The language does not reveal any intention to interfere with, or otherwise affect, other good conduct deductions to which the prisoner might be entitled." The opinion continued by declaring that such an interpretation in some circumstances might bring about "an anomalous result," which he did not believe the Legislature intended. He then proceeded to say, as an "alternative interpretation," that the language "was intended to indicate that — in the event of violation of parole — good conduct deductions should not be calculated so as to authorize discharge of the prisoner during the first six months after his return to the institution. This can be accomplished by suspending the calculation of good conduct credits for the term which remains after the end of the parole period until the six-month period . . . has expired. If, upon the calculation of credits at that time, the prisoner is entitled to a sufficient reduction in sentence, he may of course be discharged immediately; but he has at least suffered some penalty for having violated the conditions of his parole." The Attorney General then observed that the law "has been ambiguously drafted, and final determination of the legislative intention may well require a further amendment." He concluded by approving instructions to the superintendents of correctional institutions that per-

sons returned to prison after parole violations must serve six months before sentences may be reduced.

The single justice ruled that § 3 should be construed in accordance with "the literal interpretation." He agreed with the ruling of the Attorney General to the extent that § 3 added ambiguous language to § 129. He made reference to a "clear" Senate amendment of November 9, 1965,[1] in which the House did not concur,[2] but which would have made § 3 "clearly consistent" with the "alternative interpretation," and would have had "the effect of refining somewhat the recommendation" of the Third Report of the Special Commission on Firearms, Paroles, and Related Matters (1965 Senate Doc. No. 1151).[3] The single justice intimated that it did not appear that the former Attorney General in preparing his 1966 opinion was aware of the legislative history.

The single justice concluded that the petitioner is now entitled to be discharged and to receive a certificate. He correctly ruled that the language added to § 129 does not prevent a prisoner who violates parole from receiving credit for good conduct deductions already accrued upon his return to confinement. Since the amendment was penal in nature, its ambiguity should be resolved in favor of the petitioner. *Commonwealth* v. *Hayden,* 211 Mass. 296, 297. We agree with the Attorney General, however, that it would be an "anomalous result" if a prisoner was immediately released following a violation of parole because of good conduct deductions based on that portion of his sentence

---

[1] "Notwithstanding any provisions of this section to the contrary relative to deductions from sentences, a prisoner whose parole has been revoked by the parole board and who has been returned to a correctional institution . . . for violation of his parole shall not be entitled to a certificate of discharge nor released until he has served at least six months on said sentence from the date of his return, provided, however, that the provisions of this paragraph shall not be construed as authorizing any prisoner to be held beyond the maximum term of imprisonment to which he was sentenced."

[2] The House enacted § 3 in the form in which it now appears, and the Senate concurred.

[3] "We further recommend that it [§ 129] be further amended to provide that a person who violates the condition of his parole shall not be issued a certificate of discharge earlier than six months."

not yet served. In an unpublished opinion by the Attorney General to the Commissioner of Correction dated January 15, 1964, the Commissioner was advised that his policy of crediting prisoners with deductions at the beginning of their sentence, subject to subsequent forfeiture, was proper under § 129. But we hold that the language of § 129 which states that a prisoner violating parole "shall not receive deductions . . . for any of the first six months after he is returned" means not only that good conduct deductions are not to be earned during that period but also that deductions based on the portion of the sentence, if any, remaining after the six months period are not to be credited until the six months have elapsed. This interpretation will ensure that prisoners who, like the petitioner, have already earned deductions for good conduct before they are returned to imprisonment, will receive the benefits due them. It will also avoid the "anomalous result" suggested.

*Writ to issue.*