ELWIN L. SALLEY, JR., petitioner.

Norfolk.   November 10, 1980. — December 17, 1980.

Present: HALE, C.J., ROSE, & KASS, JJ.

*Imprisonment.   Parole.*

A prisoner serving a sentence for a sex-related offense who had been pa-
   roled on a date determined by applying "statutory good time" credits
   authorized under G. L. c. 127, § 129, was not entitled to a reapplica-
   tion of the credits in determining his release date after he had been
   returned to prison for a violation of his parole. [40-43]

PETITION filed in the Superior Court Department on
June 14, 1979.

The case was heard by *Meyer,* J.

*Bruce W. Carroll* for Elwin L. Salley, Jr.

*Annette C. Benedetto,* Assistant Attorney General, for
Superintendent, Massachusetts Correctional Institution at
Walpole.

KASS, J.   This petition for habeas corpus brings to us
another case having to do with the computation of credits
against a prison sentence.   No judgment was entered in the
trial court in accordance with Mass.R.Civ.P. 58, as amend-
ed, 371 Mass. 908 (1977), and, accordingly, the appeal must
be dismissed.   *Tisei* v. *Building Inspector of Marlborough,* 5
Mass. App. Ct. 328, 330 (1977).   Since the case has been
fully briefed and argued, however, we state our views.
*Ibid.*

Salley, the petitioner, was convicted of rape in 1961 and
received a sentence of eighteen to twenty years at Walpole.
Applying "statutory good time" credits[1] authorized under

---

[1] These are credits given under G. L. c. 127, § 129, for good conduct.
They differ from "earned good time," as to which see note 3, *infra.*

G. L. c. 127, § 129, as amended through St. 1960, c. 765, § 4, Salley became eligible for parole on January 13, 1973. This was 3,000 days before his maximum sentence would otherwise have expired. Had his offense been other than a sex-related offense,[2] Salley would have been entitled to an unconditional discharge from prison. But someone whose conviction is for a sex-related crime does not receive a certificate of discharge upon the release date determined by application of good time credits, "but shall be released on parole and shall be subject to the provisions of law governing parole until the expiration of the term of imprisonment to which he has been sentenced." *Ibid.*

With complications not pertinent to this case, Salley was released from confinement on parole, giving full effect to his good time credits. While thus at liberty he was convicted of assault and battery, and this resulted in the revocation of his parole on October 28, 1977. After he served his sentence for assault and battery, Salley, on the basis of the parole revocation warrant, was recommitted to the Massachusetts Correctional Institution at Walpole, of which the respondent is the superintendent. There prison authorities calculated Salley's new release date as February 4, 1983,[3] and, in doing so, counted as used up the 3,000 days of good time credits which had been applied to determine Salley's original parole release date. Salley argues, in substance, that the statutory good time credits are vested in the prisoner who receives them, subject only to a penalty of six months of incarceration for violation of parole.

In support of his position, Salley notes the difference in purpose of statutory good time credits (to encourage good

---

[2]With the enactment of St. 1965, c. 884, §§ 1-3, persons convicted of sex-related offenses no longer received good time credit against their sentences under G. L. c. 127, § 129. See *Amado* v. *Superintendent, Mass. Correctional Inst., Walpole,* 366 Mass. 45 (1974), upholding the constitutionality of that statute.

[3]That date may be altered by the application of "earned good time" credits such as are prescribed in G. L. c. 127, § 129A (blood donations) and § 129D (satisfactory performance of work or completion of certain programs).

behavior in prison) and the parole system (to enforce good behavior outside of prison) and rests on that distinction several arguments having a common skein: that an infraction in one system ought not to result in loss of rights under the other. See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 667-668 (1978). The most readily apparent fallacy in that reasoning, of course, is that G. L. c. 127, § 129, by its very terms, ties together good conduct in prison and the right to parole; i.e., a sex-offender's parole release date is fixed by his good time credits.

Salley places particular emphasis, however, on the text of the last sentence of G. L. c. 127, § 129, as amended by St. 1967, c. 379, which reads as follows: "A prisoner released on parole by the parole board, who has failed to observe all the rules of his parole and has been returned to a correctional institution for the violation of his parole, shall not receive deductions described in this section until he has served six months following his return to the correctional institution." This language was construed in *Allen* v. *Massachusetts Parole Bd.,* 352 Mass. 471 (1967), to mean that a prisoner who violates parole would not be prevented from receiving good time credit already accrued upon his return to confinement. *Id.* at 474.

The question in the instant case strikes us, however, not as one of losing, or forfeiting, previously accrued credits, but rather whether a person serving a sentence for a sex-related crime can reuse statutory good time credits already once applied. Salley was released from confinement on parole on a date arrived at by assuming the maximum statutory good time credits available under § 129.[4] Had his offense not been one of the sex-related ones detailed in § 129, Salley would, as we have observed, have been entitled to an unconditional release. Because his offense was sex-related, the most he could get from full utilization of his

---

[4] The computation is 240 months (the full sentence) times twelve and a half days for each month, i.e., 3,000 days. This works out to a reduction of the maximum sentence somewhat in excess of eight years.

good time credits was early mandatory parole, a benefit which Salley received in full. If, as he suggests, his credits were to be reapplied, there would, as a matter of arithmetic, be no sentence left to serve because after the parole release date, the time remaining on the sentence would infallibly be shorter than the good time credits which had earlier triggered the prisoner's release.

These sentencing statutes must be read against a backdrop of fairness and practical sense. *Chalifoux* v. *Commissioner of Correction,* 375 Mass. 424, 427-428 (1978). *Lynch, petitioner,* 7 Mass. App. Ct. 529, 533-534 (1979), S.C., 379 Mass. 757 (1980). *Commonwealth* v. *Carter,* 10 Mass. App. Ct. 618, 620-621 (1980). One of the elements in the backdrop is that the Legislature undertook in § 129 to regulate "the time at which and the conditions under which persons convicted of certain sex offenses are to be released from prison." *Amado* v. *Superintendent, Mass. Correctional Inst., Walpole,* 366 Mass. 45, 48 (1974).

We conclude that the respondent was correct in determining that the petitioner had exhausted his statutory good time credits.

*Appeal dismissed.*