THOMAS F. BURNO vs. COMMISSIONER OF CORRECTION
& another.[1]

Suffolk.  September 12, 1986. — January 21, 1987.

Present: Wilkins, Liacos, Abrams, & O'Connor, JJ.

*Imprisonment. Parole. Statute,* Construction.

Discussion of the length of a sentence of imprisonment as affected by statutory "good time" deductions under G. L. c. 127, § 129, and "earned good time" deductions under G. L. c. 127, § 129D, in relation to parole. [112-116]

The six-month waiting period established in the final sentence of G. L. c. 127, § 129, for crediting prospective statutory "good time" deductions to the sentence of a parole violator returned to a correctional facility is not "the maximum term for which he may be held under his sentence" within the meaning of G. L. c. 127, § 129D, and, thus, the returned parole violator was not entitled to a deduction of any "earned good time" under § 129D from the six-month period rather than from the revised expiration date of his sentence. [118-125]

CIVIL ACTION commenced in the Superior Court Department on February 5, 1985.

The case was heard by *William G. Young,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*John P. Osler* for the plaintiff.

*Brian K. Bowen* for the defendants.

O'CONNOR, J. Thomas F. Burno commenced this action for injunctive and declaratory relief on February 5, 1985. Burno sought immediate release from his confinement at Massachusetts Correctional Institution, Concord, and a declaration of his right to the benefit of certain deductions from his sentence

---

[1] Superintendent, Massachusetts Correctional Institution, Concord. Hereinafter, the two defendants will sometimes be designated jointly as "the Department."

of imprisonment. The case was argued on a statement of agreed facts, and a judge of the Superior Court ordered that judgment be entered for the defendants. This appeal followed.[2]

*The Statutory Scheme for Deductions from Sentence.*

To understand the issue in this case, it is necessary to review the Commonwealth's statutory scheme of deductions from sentences of imprisonment. For prisoners serving eligible sentences, several different types of deductions may be applied to reduce the maximum period of confinement. To decide this case, we need to consider only the following: (1) deductions for good conduct ("statutory good time") under G. L. c. 127, § 129,[3] and (2) deductions for participation in work, educa-

---

[2] Burno was discharged from his sentence on May 13, 1985. This fact does not render moot the issues in this case, because the controversy is one of public importance, "capable of repetition, yet evading review," and therefore excepted from the canon of mootness. See *Diafario* v. *Commissioner of Correction,* 371 Mass. 545, 552-553 (1976).

[3] General Laws c. 127, § 129 (1984 ed.), provides, in relevant part: "The officer in charge of each correctional institution or other place of confinement, except a defective delinquent department, shall keep a record of each prisoner in his custody whose term of imprisonment is four months or more. Every such prisoner whose record of conduct shows that he has faithfully observed all the rules of his place of confinement, and has not been subjected to punishment, shall be entitled to have the term of his imprisonment reduced by a deduction from the maximum term for which he may be held under his sentence or sentences, which shall be determined as follows: Upon a sentence of not less than four months and less than one year, two and one half days for each month; upon a sentence of not less than one year and less than two years, five days for each month; upon a sentence of not less than two years and less than three years, seven and one half days for each month; upon a sentence of not less than three years and less than four years, ten days for each month; upon a sentence of four years or more, twelve and one half days for each month; . . . . If a prisoner violates any rule of his place of confinement, the commissioner of correction, the county commissioners, and, in Suffolk county, the penal institution[s] commissioner of Boston, upon the recommendation and evidence submitted to them respectively, in writing by the principal officer, or officer in charge, shall decide what part, if any, of such good conduct deduction from sentence or sentences shall be forfeited by such violation, and may likewise determine, in the event of the prisoner's subsequent good conduct, whether any or all of such deduction shall be restored.

"A prisoner in a correctional institution of the commonwealth who is entitled to have the term of his imprisonment reduced shall receive from the commissioner of correction a certificate of discharge and shall be released

tional, or other programs valuable to a prisoner's rehabilitation under G. L. c. 127, § 129D.[4]

from the correctional institution in which he has been confined, upon the date which has been determined by such deductions from the maximum term of his sentence or sentences. . . . A prisoner released on parole by the parole board, who has faithfully observed all the rules of his parole and has not been returned to prison or a county penal institution for the violation of his parole, shall be entitled to have the term of his imprisonment reduced by a deduction from the maximum term for which he may be held under the sentence or sentences, but only for that period of the sentence or sentences during which he was actually confined, and in such case, the parole board shall issue to him a certificate of final discharge and release from further supervision upon the date which has been determined by such a deduction from the maximum term of his sentence or sentences. . . .

"If, during the term of imprisonment of a prisoner confined in a correctional institution of the commonwealth, such prisoner shall commit any offense of which he shall be convicted and sentenced, he shall not be entitled to any deductions hereunder from the new sentence or sentences of imprisonment. A prisoner released on parole by the parole board, who has failed to observe all the rules of his parole and has been returned to a correctional institution for the violation of his parole, shall not receive deductions described in this section until he has served six months following his return to the correctional institution."

[4] General Laws c. 127, § 129D (1984 ed.) provides: "For the satisfactory conduct of a prisoner while confined at a correctional institution of the commonwealth, or any jail or house of correction, but working at a state hospital or state school, satisfactory completion of an educational program leading to the award of a high school equivalency certificate, satisfactory performance of said prisoner in completion of any other educational sequence or any vocational training program established within or without the institution, satisfactory performance of said inmate when he or she is employed on work-release or in a prison industry, or satisfactory performance of said inmates in any other program or activity which the superintendent of the institution shall deem valuable to said prisoner's rehabilitation, the commissioner may grant, in addition to the deductions of sentence provided under sections one hundred and twenty-nine and one hundred and twenty-nine C a further deduction of sentence of not more than two and one-half days for each month while said prisoner is working in a state hospital or school, on work-release or working in a prison industry, or partaking in any of the said programs or activities as aforesaid. Such further deduction of sentence shall be added to any deduction to which the prisoner is entitled under said sections one hundred and twenty-nine and one hundred and twenty-nine C for reducing the term of imprisonment by deduction from the maximum term for which he may be held under his sentence or sentences, and for reducing from the minimum term of the sentence or sentences the good

Unlike the other types of deductions, statutory good time is received as soon as the prisoner begins to serve his sentence. Although a prisoner can forfeit statutory good time for affirmative misconduct, he does not have to wait or do anything to acquire it in the first place. See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 661 (1978). Section 129 creates a right to statutory good time and implicates a liberty interest protected by the due process clause of the United States Constitution. *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 389 (1983).

These statutory good time deductions account for the most significant reductions of eligible sentences. The rate of reduction increases with the length of the sentence imposed. For a prisoner like Burno, whose maximum sentence is four years or more, the sentence is reduced for good conduct at the rate of twelve and one-half days from the maximum term for each month served. G. L. c. 127, § 129. When a prisoner begins to serve his sentence, the applicable rate of reduction is used to calculate the prisoner's discharge date. See *Pina, supra* at 661.

An important characteristic of statutory good time is that these deductions are available only for the portion of the sentence actually served in confinement. G. L. c. 127, § 129. *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 856 (1982). This restriction is consistent with the purpose of statutory good time, which is to encourage good conduct in prison. See *Pina, supra* at 667. No statutory good time is awarded for portions of a sentence served on parole. *Id.* at 669.

Hence, when a prisoner is released on parole, his discharge date must be recalculated so that he receives statutory good time deductions only for the months spent in confinement prior

---

conduct credits earned under this section for parole eligibility as provided under section one hundred and thirty-three.

"A prisoner whose term of imprisonment is reduced from the maximum term for which he may be held under his sentence or sentences shall receive from the commissioner a certificate of discharge on the date which has been determined by such additional deductions from the maximum term of his sentence or sentences."

to his release. Because he will have less statutory good time, the prisoner who is paroled will complete his sentence later than one who has been given the same sentence but remains confined. *Id.* at 661.

When a prisoner's parole is revoked, his discharge date must again be recalculated so that he receives deductions for the time remaining to be served — called prospective statutory good time — as well as for the time served prior to his release on parole. *Id.* at 661-662. He still does not receive good conduct deductions for the time successfully served on parole, but because the prospective good time is restored, the prisoner who is returned as a parole violator will complete his sentence earlier than the prisoner who remains on parole to the end of his sentence. See *id.* at 662.

For any sentence being served on parole, in the absence of the "six-month law," discussed immediately below, there will arrive a time when the restoration of prospective statutory good time would result in the prisoner-parolee's immediate discharge from his sentence. The way to restore these deductions, of course, would be to violate parole and be returned to prison.[5]

---

[5] This point can be illuminated with an illustration. Suppose a prisoner is sentenced to an eight-to-twenty year term on January 1, 1975, and that, while incarcerated, he receives only statutory good time to reduce his sentence. As of January 1, 1975, his discharge date will be calculated in light of his anticipated statutory good time for the full twenty-year maximum term. This initial discharge date will be some date near October, 1986 (20 years $\times$ 12 months/year $\times$ 12½ days/month = 3000 days; January 1, 1995 — 3000 days = [approximately] October 10, 1986). Suppose now that the prisoner is paroled on January 1, 1983. His discharge date would then be recalculated so that it reflects only statutory good time credits accrued prior to his release on parole. This new discharge date will be some date near September, 1991 (8 years $\times$ 12 months/year $\times$ 12½ days/month = 1200 days; January 1, 1995 — 1200 days = [approximately] September 15, 1991). Now, suppose that our prisoner violates parole and is returned to prison on January 1, 1990. In the absence of the six-month law, he would receive prospective statutory good time deductions for the five years remaining until the expiration of his maximum term (5 years $\times$ 12 months/year $\times$ 12½ days/month = 750 days). These prospective credits would be added to those accrued prior to his release on parole. The prisoner would be entitled to immediate discharge upon his return to prison on January 1, 1990 (January 1, 1995 — [750 + 1200] days = [approximately] August 25, 1989).

In this unintended and anomalous way, § 129 would reward parole violations. The Legislature sought to remedy this anomaly in 1965, when it enacted the "six-month law." St. 1965, c. 884, § 3, amended by St. 1967, c. 379. The six-month law is the last sentence of § 129; it provides that prospective statutory good time cannot be credited against the sentence of a returned parole violator until that violator has served six months in confinement following his return. See *Allen* v. *Massachusetts Parole Bd.,* 352 Mass. 471, 475 (1967).

It is important to note that the six-month law only delays release by virtue of *prospective* statutory good time. In some cases the parole violator will be entitled to discharge prior to the expiration of the six-month period, but this entitlement would result from statutory good time and other deductions already earned or accrued. The six-month law "does not prevent a prisoner who violates parole from receiving credit for good conduct deductions already accrued upon his return to confinement." *Allen, supra* at 474. Moreover, the six-month law does not postpone the parole violator's receipt of credit for deductions earned under other statutory provisions. See Rep. A.G., Pub. Doc. No. 12, at 148 (1967).

"Earned good time" commonly refers to deductions from sentences earned under statutory provisions other than § 129.[6] Hereinafter, "earned good time" will refer to deductions earned pursuant to § 129D only. These deductions are credited against the prisoner's sentence only after he has satisfied the prerequisite for receiving them. As noted *supra,* we are concerned in this case with deductions earned under § 129D for participation in work, educational, or other rehabilitation programs. Like the other earned deductions, these rehabilitation credits are not subject to forfeiture. *Pina, supra* at 662 n.1; 103 Code Mass. Regs. 411.11 (4) (1978) (§ 129D deductions not subject to forfeiture); cf. G. L. c. 127, § 129A (blood donation deductions not subject to forfeiture).

---

[6] General Laws c. 127, § 129A (deductions for blood donations), § 129C (deductions for satisfactory conduct in prison camp), and § 129D (deductions for participation in work, educational, or other programs valuable to the prisoner's rehabilitation).

*The Instant Case.*

At the time this action was commenced, Burno was serving a sentence of eight-to-twenty years imposed on July 1, 1971. This sentence was credited with the 265 days Burno was confined awaiting and during trial, making it effective as of October 9, 1970. See G. L. c. 127, § 129B. Ordinarily, this would mean that Burno's maximum twenty-year term would expire on October 8, 1990. Here, however, 237 days of "dead time" — time elapsing between escape and return to custody or between the issuance and execution of a parole violation warrant — were added to the maximum term, resulting in a revised maximum expiration date of June 2, 1991.

Burno's most recent release on parole began on December 15, 1982. As of that date, he had served nine years, six months and sixteen days in confinement. He had thus accrued 1,425 days of statutory good time. He had also earned 171.5 days of additional deductions under § 129D.

Burno was returned to custody as a parole violator effective November 15, 1984. The time remaining to be served until his revised maximum expiration date, June 2, 1991, amounted to six years, six months, and nineteen days. Burno thus was eligible for 987.5 days of prospective statutory good time. If this prospective good time, as well as Burno's accrued good time and the deductions he earned under § 129D, were all subtracted from the revised maximum expiration date, Burno would have been entitled to discharge as of May 5, 1984, a date before his return to custody as a parole violator. However, excluding consideration of the prospective statutory good time, and calculating from the day of Burno's return to custody, November 15, 1984, Burno would not be entitled to discharge until a date near the beginning of 1987. This date would not be within the first six months following Burno's return as a parole violator. That six-month period expired on May 13, 1985.

The judge correctly ruled that Burno was not entitled to credit for his prospective statutory good time until the expiration of the full six-month period following his return to custody. That ruling is not challenged. But Burno does challenge the

judge's conclusion that he was not entitled to discharge before that date. He relies on c. 127, § 129D.

Burno argues that, when he was returned to custody on November 15, 1984, the maximum term for which he could be held under his sentence was the six-month waiting period imposed on parole violators by the final sentence of G. L. c. 127, § 129, and that he was entitled to a reduction of that period by the 171.5 days of good time he had earned pursuant to § 129D. He argues that he was entitled to discharge on November 22, 1984. He contends that the failure to apply his § 129D deductions in this manner resulted in the impermissible forfeiture of those credits, and, further, that the defendants' method of implementing the six-month law impermissibly extends the reach of a penal statute by implication. Although we recognize a certain amount of logic in Burno's contentions, we affirm the judgment of the Superior Court.

*Reasoning.*

We agree with Burno that § 129D deductions are intended to reduce the maximum period of a prisoner's actual confinement. We also agree that in interpreting § 129D our focus should be on the statutory words, "the maximum term for which [a prisoner] may be held under his sentence . . .," found in § 129D, rather than on the single word, "sentence."[7] The statutory language makes clear that deductions are to be made from such "maximum term," and that this maximum term is something different from the prisoner's "sentence."

Our acceptance of those contentions, however, is not helpful to Burno because we do not agree with him that the six-month waiting period imposed by § 129 constituted "the maximum term for which he [could] be held under his sentence" within the meaning of § 129D, thus entitling him to a deduction of

[7] The relevant sentence in G. L. c. 127, § 129D, is as follows: "Such further deduction of sentence shall be added to any deduction to which the prisoner is entitled under said sections one hundred and twenty-nine and one hundred and twenty-nine C for reducing the term of imprisonment by deduction from the maximum term for which he may be held under his sentence or sentences, and for reducing from the minimum term of the sentence or sentences the good conduct credits earned under this section for parole eligibility as provided under section one hundred and thirty-three."

the earned 171.5 days from the six-month period rather than from his revised maximum expiration date. If "[the] language employed is neither peculiar nor technical, but is comprised rather of familiar words commonly combined to express . . . a simple thought . . . [our duty is to] construe the statute according to the common and approved use of [the] language." *New England Medical Center Hosp., Inc.* v. *Commissioner of Revenue,* 381 Mass. 748, 750 (1980). See *Jason* v. *Jacobson,* 387 Mass. 21, 24 (1982); 2A C. Sands, Sutherland Statutory Construction §§ 46.01, 46.03, 45.08 (4th ed. 1984). Consistently with that basic rule of statutory construction, we construe the words "the maximum term for which he may be held under his sentence" as referring to the maximum period of confinement pursuant to the sentence, rather than to a period of confinement computed by deducting statutory good time and earned credits therefrom. Burno cites no authority for the proposition that the phrase "maximum term" in this context refers to an ever-changing and usually decreasing period of time for which a prisoner still can be held in confinement, nor does he otherwise persuade us to accept such a construction.

Our construction of the crucial language not only is suggested by the usual meaning given to it, but our construction also is supported by the remainder of the sentence in which it appears. Deductions under § 129D serve not only to reduce the term of imprisonment by deduction from the maximum term of sentence, but also to bring parole eligibility nearer by deduction from the prisoner's minimum term. See G. L. c. 127, § 133. The phrases "maximum term" and "minimum term" in § 129D merely describe the application of these earned deductions to indeterminate sentences. See G. L. c. 279, §§ 24, 31, 32. The Legislature used this terminology to manifest its intention that § 129D credits reduce both the "maximum" and "minimum" terms of any sentence imposed on a prisoner. Cf. G. L. c. 127, § 129 (only maximum term reduced), § 129A (only minimum term reduced), § 129C (maximum and minimum terms reduced).

Burno does not dispute that, as used in § 129 for purposes of computing his statutory good time, "maximum term" refers

to the maximum term of an indeterminate sentence imposed by a sentencing court. See *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 854 (1982). We see no reason why this same phrase should denote something different in § 129D. Because the statutes concern the same subject matter and class of persons, they are in pari materia, and should be construed together; given that both § 129 and § 129D concern deductions from sentence for prisoners, it is reasonable to conclude that the Legislature intended that one meaning should be assigned to identical language in both statutes. See 2A C. Sands, Sutherland Statutory Construction §§ 51.01, 51.02, 51.03 (4th ed. 1984). In the ordinary case, we might not make a strong presumption that two such statutes are in pari materia, because §§ 129 and 129D were not enacted together, and their purposes, narrowly considered, are not precisely identical.[8] See *id.* at § 51.03 (4th ed. 1984). Here, however, the text of § 129D indicates clearly that "maximum term" should be construed in the same sense in both statutes: deductions earned under § 129D are to be "added to any deduction to which the prisoner is entitled under [§§ 129 and 129C] for reducing the term of imprisonment by deduction from the maximum term . . . ." G. L. c. 127, § 129D. The described method of computation makes inescapable the conclusion that "maximum term" has the same meaning in both sections.

None of our past decisions requires a contrary result. Burno asserts that *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham, supra,* supports his construction of the relevant statutes. We do not agree. In *Hennessy,* the prisoner was sentenced for a term of two years, one year to be served

---

[8] Section 129 appears in St. 1941, c. 690, § 2. Section 129D was added by St. 1973, c. 528. We note, however, that separate deductions for "satisfactory and diligent performance of work assigned to a prisoner" were authorized by § 129 as early as 1948. See St. 1948, c. 450, § 1.

The purpose of statutory good time credits under § 129 is to encourage good behavior in prison. *Hennessy, supra* at 855. See also *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 667 (1978). Deductions under § 129D, on the other hand, encourage activity that will make incarceration a more personally rewarding experience and improve prisoners' lives outside of prisons. See 1973 Senate Doc. No. 1504, at 50-51.

in confinement and the remainder to be suspended with proba-
tion. Hennessy had earned and accrued credits under §§ 129
and 129D. The superintendent deducted those credits from the
entire partially suspended sentence. We ruled that this method
of computation was improper — that the credits should be
deducted from the one-year committed portion of the sentence.
We considered irrelevant the superintendent's observation that
Hennessy could have been held for two years if she violated
the terms of her probation, and stated that the credits should
be deducted from "that term which is certain at the relevant
point in time." *Id.* at 854. It is primarily on this language, and
on our rejection of a method of computation denying Hennessy
the benefit of her deductions, that Burno relies.

This reliance is misplaced. Because *Hennessy* involved
neither an indeterminate sentence nor the six-month law, the
cases are significantly different. When we said in *Hennessey*
that credits should be deducted from "that term which is certain
at the relevant point in time," we were referring to a definite
term of confinement imposed by a sentencing court. The phrase
"relevant point in time" merely denotes the time of sentencing;
immediately after using that phrase, we specifically stated that
"[i]n the petitioner's case, for example, her 'term of imprison-
ment' was one year *at the time of her original commitment"*
(emphasis added). Language that was appropriate to describe
why credits should not be deducted from the entire term of a
partially suspended sentence should not indiscriminately be
applied to determine the relationship between the six-month
law and credits against an indeterminate sentence. Nothing in
*Hennessy* is contrary to our holding that, in the context of an
indeterminate sentence, "maximum term" refers to the maxi-
mum sentence imposed.

Indeed, the *Hennessy* opinion explicitly recognized the basic
propositions necessary to the result we reach today. We said
in that case that "the phrase 'maximum term for which he may
be held,' in § 129, . . . is addressed to the application of good
conduct deductions to indeterminate sentences . . . [and refers
to] the maximum term of an indeterminate sentence, [as op-
posed to] the minimum term of such a sentence." *Id.* at 854.

We also noted that "because earned good time credits are simply added to statutory good time credits for the purpose of reducing the term of imprisonment (see G. L. c. 127, § 129D), the issue [of how to apply the deductions] is the same for both types of credits." *Id.* at 853 n.5.

We recognize that statutes treating the calculation of sentences "should be read against the backdrop of fair treatment of the prisoner." *Commonwealth* v. *Grant,* 366 Mass. 272, 275 (1974). See *Manning* v. *Superintendent, Mass., Correctional Inst., Norfolk,* 372 Mass. 387, 394 (1977) ("Liberty is of immeasurable value; it will not do to read statutes and opinions blind to the possible injustice of denying credit"); *Lynch, petitioner,* 379 Mass. 757 (1980). Cf. *Chalifoux* v. *Commissioner of Correction,* 375 Mass. 424, 427 (1978) (in cases concerning the computation of sentences, "where no statute was controlling, we have been guided by considerations of fairness and a proper sense of justice"). For this reason, we address explicitly the contention that we should not construe § 129D in a way that effects a forfeiture of the credits Burno earned pursuant to that statute.

We agree that § 129D deductions are generally intended to reduce the maximum period of a prisoner's actual confinement, and that these deductions are protected against forfeiture. *Pina* v. *Superintendent, supra* at 662 n.1; 103 Code Mass. Regs. 411.11 (4). We note further that the language of the six-month law only evinces an intent to affect the receipt of statutory good time deductions. See G. L. c. 127, § 129 (a returned parole violator "shall not receive deductions described *in this section* until he has served six months following his return to the correctional institution" [emphasis supplied]). It is also significant that deductions under § 129D, unlike statutory good time credits, are earned by the prisoner's own affirmative efforts in educational, work, or other rehabilitation programs.

In the circumstances of the present case, if a prisoner's § 129D credits are not deducted from the waiting period imposed by the six-month law, he will effectively lose the benefit of those credits. He will not be released from confinement any

earlier than a prisoner who has earned no § 129D deductions, but is otherwise similarly situated.[9]

However, the instant case does not involve any forfeiture forbidden by statute, regulation, or our dictum in the *Pina* case. Although the end result may have been the same for Burno, there is a significant — indeed, in this case, dispositive — difference between the prohibited forfeiture of credits and the effective loss of the benefit of credits. Forfeiture is prohibited only in the sense that, once earned, § 129D deductions cannot be reclaimed by the Department on the ground that the prisoner violated some institutional rule.[10] This characteristic distinguishes earned deductions from statutory good time credits, which can be reclaimed for that reason. See G. L. c. 127, § 129.

Burno argues, however, that *Allen* v. *Massachusetts Parole Bd.*, 352 Mass. 471 (1967), proscribes the method of computation we endorse today. In *Allen,* we protected a parole violator's accrued statutory good time by holding that such accrued time should be credited against his sentence immediately upon his return to confinement. We wanted to ensure that the six-month law would not operate to deprive returned parole violators of "the benefits due them." *Id.* at 475.

The principle announced in *Allen* is not as broad as Burno claims, however. That the six-month law should not deny prisoners "the benefits due them" signifies only that credits already earned or accrued will not be reclaimed, nor their receipt delayed, by the law's operation. There is no guarantee that all earned or accrued benefits will be used. The accrued statutory good time we protected in *Allen can* be "forfeited" in the sense that a prisoner may never need or utilize the full benefit of his deductions. Such a situation will present itself

---

[9] Of course, because § 129D credits are deducted from both the maximum and minimum terms of an indeterminate sentence, G. L. c. 127, § 129D, those credits also result in the prisoner's earlier eligibility for parole. The record in this case does not reveal whether Burno actually received any benefit of this sort.

[10] It does not seem disputed that the Department never reclaimed Burno's § 129D credits in this sense. See brief of defendants at 3.

whenever the receipt of prospective statutory good time at the end of the six-month period, added to accrued statutory good time, is more than sufficient for the prisoner's immediate release. We can use Burno's case to illustrate the point. Suppose that Burno had never earned any deductions under § 129D. When Burno was returned as a parole violator, he still would have been entitled to immediate release had he been credited at that time with his prospective statutory good time. By operation of the six-month law, however, he would not have been released until the expiration of the full waiting period. Several months of his accrued statutory good time, therefore, would not have been needed or utilized. In short, *Allen* does not protect accrued statutory good time in the way Burno wishes us to protect his earned credits. Moreover, although earned credits are different from statutory deductions in important ways, we cannot say that fair treatment of prisoners requires that § 129D deductions be treated differently from accrued good time deductions under § 129.

We conclude that the type of "forfeiture" involved in this case is not prohibited. It is merely a natural and logical consequence of the Commonwealth's statutory scheme and Burno's violation of parole. The alternative would be to hold that the six-month postponement period constituted Burno's "maximum term". Such a holding, in a sense, would recognize and credit prospective statutory good time immediately upon Burno's return to confinement.[11] That would violate the express mandate of the six-month law. Furthermore, it would tend to resuscitate, for some parolees, the very incentive to violate parole that the six-month law was designed to eliminate. Our construction of the statutes is the only way to maintain fidelity to the purpose and the specific mandate of the six-month law, and to the unambiguous language of § 129D as well.[12] We

[11] It is only by recognizing and (prematurely and hypothetically) crediting prospective statutory good time that we could conceivably regard the six-month period as Burno's "maximum term." See brief of plaintiff at 8, 10, and 24 (implicitly acknowledging the veracity of this proposition).

[12] For this reason it is unnecessary to address Burno's contention that the Department unlawfully extended the reach of a penal statute by implication.

hold, therefore, that returned parole violators can be discharged within the postponement period established by the six-month law only if they are entitled to discharge on the basis of earned and accrued deductions alone, without any consideration of whatever prospective statutory good time the prisoner may be entitled to receive when the six-month period expires.

To summarize: we hold that "maximum term for which [a prisoner] may be held under his sentence," as used in G. L. c. 127, § 129D, refers to the maximum sentence imposed on a prisoner. Deductions earned under that section should be credited against that sentence, rather than against the waiting period established by the six-month law. Accordingly, we affirm the judgment of the Superior Court.

*So ordered.*