KEVIN CONNERY & another[1] *vs.* COMMISSIONER OF
CORRECTION & another[2]
(and a companion case[3]).

Nos. 91-P-36 & 91-P-1469.

Suffolk. April 24, 1992. - September 4, 1992.

Present: ARMSTRONG, KASS, & GREENBERG, JJ.

Further appellate review granted, 413 Mass. 1108 (1992).

*Imprisonment*, Good conduct deductions, Parole. *Statute*, Construction.

Earned good conduct deductions, authorized by G. L. c. 127, § 129D, are
to be taken from a prisoner's parole eligibility date as calculated pursu-
ant to G. L. c. 127, § 133. [255-261]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 3, 1989.

The case was heard by *Elbert Tuttle*, J., on a motion to
dismiss.

*James R. Pingeon* for the plaintiffs.

*M. Yvonne Gonzalez*, Special Assistant Attorney General,
for the defendants.

KASS, J. Kevin Connery and Kevin Philbrook, the plain-
tiffs, are both prisoners at the Massachusetts Correctional
Institution at Cedar Junction. The former is serving a ten to
fifteen year sentence (with a concurrent sentence), and the
latter is serving a four to five year sentence. They brought
this action for declaratory and injunctive relief to challenge
as unlawful the policy of the Department of Correction and
the parole board of deducting good conduct (good time)
credits earned pursuant to G. L. c. 127, § 129D (1990 ed.),
from a prisoner's minimum sentence, as imposed by the
judge, rather than from the parole eligibility date which is

---

[1] Kevin Philbrook.
[2] The chairman of the parole board.
[3] Wayne Tolley & others *vs.* Chairman of the Parole Board.

.computed as a fraction of the minimum sentence pursuant to G. L. c. 127, § 133 (1990 ed.). A Superior Court judge dismissed the prisoners' case for failure to state a claim upon which relief can be granted. Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). The plaintiffs appealed. We reverse the judgment of dismissal.[4]

In cases of this sort, it assists understanding to set down a primer on how a prisoner's parole eligibility date is determined in the absence of earned good time when the sentence imposed has a minimum and a maximum term.[5] See, e.g., *Burno* v. *Commissioner of Correction*, 399 Mass. 111, 112 (1987). The maximum sentence is just that, the maximum amount of time that the prisoner will serve in prison if he has received no good time deductions and if he is not granted parole. See *Commonwealth* v. *Hogan*, 17 Mass. App. Ct. 186, 189 (1983). The minimum sentence serves as a base for determining his parole eligibility date. *Commonwealth* v. *Haley*, 23 Mass. App. Ct. 10, 18 (1986). If the prisoner has been convicted of one of the crimes listed in G. L. c. 127, § 133(*a*), or is being sentenced for a crime committed while on parole, then the prisoner must serve two-thirds of the minimum sentence (but not less than two years) before he is eligible for parole. G. L. c. 127, § 133(*a*) and (*c*). Oth-

---

[4] Irrespective of the merits of the case, dismissal of the case under Mass.R.Civ.P. 12(b)(6) was not a correct disposition. In an action for declaratory relief, even when the plaintiff is not entitled to the relief he seeks, the court ought to declare the rights of the parties. *Gennari* v. *Revere*, 23 Mass. App. Ct. 979, 980 (1987). *Silverleib* v. *Hebshie*, 33 Mass. App. Ct. 911, 913 (1992). Ordinarily we would remand the case for the requisite declaration, but, as the facts are undisputed and the questions of law have been fully briefed by the parties, we may proceed to the merits of the case. *Zelesky* v. *Commissioner of the Div. of Pub. Employee Retirement Admn.*, 30 Mass. App. Ct. 106, 107 n.4 (1991).

[5] There are two types of good time credits: statutory good time, authorized by G. L. c. 127, § 129, and earned good time, authorized by G. L. c. 127, §§ 129C and 129D. Statutory good time is credited only against the maximum sentence imposed by the judge and, therefore, can bring the date of "wrap up" closer. We are not concerned with this type of good time and shall not consider its impact in our examples. Earned good time has an impact on the maximum term and on parole eligibility, precisely what impact being the subject of this dispute.

erwise, he is eligible for parole after he has served one-third of the minimum sentence (but not less than one year). G. L. c. 127, § 133(*b*).

An initial example with computations that do not include adjustments for good time credits may be helpful. If a prisoner is given a sentence of ten to fifteen years (as Connery was), the maximum number of years that he will serve is fifteen years. The minimum sentence of ten years results in a parole eligibility date of six years and eight months after the sentence begins if he falls within § 133(*a*) and (*c*) (the two-thirds category prisoner); the parole eligibility date would be three years and four months after the sentence begins for a one-third category prisoner.

With that background, we return to the sole but vexing question which this case presents: shall good time credits earned in accordance with G. L. c. 127, § 129D, be subtracted from a prisoner's parole eligibility date or from the date when the minimum sentence is to have been served.[6] Section 129D authorizes good time credits through participation in certain work, educational, vocational, and rehabilitation programs.[7] Those credits (calculated in days), § 129D further declares, shall be applied so as to reduce the minimum term of the sentence by the good time days "for parole eligibility as provided under [§ 133]." Thus referred to

---

[6]The question of how good time credits earned under § 129D are handled with regard to the maximum term was considered in *Burno* v. *Commissioner of Correction*, 399 Mass. 111 (1987). In passing, the court noted that "[d]eductions under § 129D serve not only to reduce the term of imprisonment by deduction from the maximum term of sentence, but also to bring parole eligibility nearer by deduction from the prisoner's minimum term." *Id.* at 119. From that language the department and the parole board draw support for their interpretation of the statutory scheme. Yet the quoted statement hardly compels the conclusion that deductions are taken from the minimum sentence.

[7]In pertinent part, § 129D provides: "Such further deduction of sentence [for participation in the programs] shall be added to any deduction to which the prisoner is entitled under said sections one hundred and twenty-nine and one hundred and twenty-nine C . . . for reducing from the minimum term of the sentence or sentences the good conduct credits earned under this section for parole eligibility as provided under section one hundred and thirty-three."

G. L. c. 127, § 133, we read that the concluding sentence of § 133 provides that earned good time days shall be subtracted "from the minimum term of sentence for release on parole . . . ." The literal and plain meaning of those words, always a good starting point for the interpretation of statutes (see *Burno* v. *Commissioner of Correction*, 399 Mass. at 119; *Salem Hosp.* v. *Rate Setting Commn.*, 26 Mass. App. Ct. 323, 324-325 [1988]), imports a deduction from the parole eligibility date; i.e., the words "minimum term of sentence for release on parole," one would suppose, mean parole eligiblity date.

It is this construction of the statute for which the prisoners contend, and, until 1981, it is the construction which commended itself to the department and the parole board. That is, they deducted earned good time credits directly from a prisoner's parole eligibility date. In 1981, however, the department and the parole board adopted the current policy of deducting earned good time credits from a prisoner's minimum sentence and then calculating the parole eligibility date based on the adjusted minimum sentence. This change in policy had the effect of decreasing the benefit prisoners receive from earned good time credits based on their status as one-third or two-thirds prisoners.[8] A one-third prisoner receives the benefit of only one day for every three days of credits earned while a two-thirds prisoner receives the benefit of two days for every three days of credits earned. This produces a certain anomaly. The prisoner who carries the more grave sentence, i.e., who has committed the more serious crime, gets more bang from each day of good time credit.

---

[8]For example, a prisoner sentenced to six to ten years would ordinarily be eligible for parole within two years (for a one-third prisoner) or four years (for a two-thirds prisoner). Assuming that prisoner earned three months in good time credits pursuant to § 129D, under the old policy, he would be eligible for release after twenty-one months (one-third prisoner) or forty-five months (two-thirds prisoner). Under the new policy, the prisoner would be eligible for release after twenty-three months (one-third prisoner: [72 months - 3 months] x ⅓ = 23) or forty-six months (two-thirds prisoner: [72 months - 3 months] x ⅔ = 46).

As justification for the change in policy, the department and the parole board raise a belated awareness of the correct mandate to be drawn from their view of the plain language of §§ 129D and 133. They also contend that the policy, and the resultant decrease in time credited, is necessary to maintain the legislative distinction between a one-third and a two-thirds prisoner. Neither contention strikes us as persuasive.

1. *The "plain meaning" of the statutes.* The department and the parole board make the argument that they are giving the phrase in § 133 which is at the center of the dispute, viz., "the minimum term of sentence for release on parole," its natural meaning. Their position is that the phrase "for release on parole" is intended only to direct the parole board to use the minimum sentence, as adjusted by good time credits, rather than the unadjusted minimum sentence, in calculating the parole eligibility date. For purposes of deducting the credits, therefore, the statute, as they read it, directs that we look to the minimum term or sentence alone. To view the phrase as the prisoners do, the department and the parole board argue, would result in a conflict with the language of the first portion of § 133, which provides that no prisoner shall be released on parole until he has served either one-third or two-thirds of his minimum sentence, depending on the category of his crime.

As we have observed, this does not strike us as a natural reading of the statute. The critical phrase in the statute seems to make sense only if we give it the prisoners' meaning, i.e., that the "minimum term of sentence for release on parole as authorized by this section" means the parole eligibility date calculated pursuant to § 133. Examination of § 133 as a whole demonstrates that the Legislature uses the term "minimum sentence" as the basis for calculating the basic parole eligibility date, by applying fractions, one-third or two-thirds, to the minimum sentence. G. L. c. 127, § 133(a), (b), (c). If the Legislature had intended, as the department and the parole board contend, that the earned good time credits be deducted from the "minimum sentence," it would have continued to use the words "minimum

sentence" in the last and, for our purposes, critical sentence of § 133. Instead, the Legislature used the phrase "minimum term of sentence for release on parole," indicating that, at that juncture, the Legislature intended a different meaning.

Nor does context lend support to the department and the parole board's interpretation. That the critical phrase, "subtracting [the good time credit days] from the minimum term of sentence for release on parole as authorized by this section," appears in a section (i.e., § 133) directed toward computing parole eligibility dates reinforces our view that it is the parole eligibility date from which subtraction is to be made.

Finally, the department and the parole board's contention that the deductions cannot be taken from the parole eligibility date because such a deduction would contravene the mandatory language of the first portion of § 133 is not compelling. While the first portions of § 133 do provide that no prisoner shall be released prior to serving one-third or two-thirds of his minimum sentence, depending on the classification of his crime, the section provides an exception to that mandate. "Notwithstanding clauses (a), (b) and (c)," certain deductions will be allowed to be taken from the "minimum term of sentence for release on parole." G. L. c. 127, § 133. Thus, by its very language, § 133 provides that those prisoners who complete certain programs may be released prior to completing one-third or two-thirds of their minimum sentences.

2. *Statutory history.* Although the correct application of the statutes can be determined from the language of the statutes, in the interest of completeness, we consider the history of the pertinent statutes. Section 133 was first codified in 1941. St. 1941, c. 690, § 2.[9] At that time, § 133 provided

---

[9]The precursor to § 133 was first enacted in 1894. St. 1894, c. 440, § 1. It provided that no parole permit could be granted until a prisoner served two-thirds of his full term. This statute was amended several times over the years, although it retained its general character. The most significant change was fixing the parole eligibility as two-thirds of the minimum term, rather than the full term. St. 1911, c. 451 § 1.

that no prisoner would receive a parole permit until he had served two-thirds of his minimum sentence and at least two and one-half years. A 1946 amendment eliminated the requirement that the prisoner serve at least two and one-half years. St. 1946, c. 254.

The statute was next amended in 1955, when a prison escape and a prisoner rebellion triggered a major revision of the prison laws. See McGrath, Criminal Law, Procedure, and Administration, 2 Ann. Surv. Mass. Law § 12.1 (1955). The amendment retained the provision that a prisoner must serve two-thirds of his minimum sentence but added a minimum time requirement of one year and a provision for good conduct deductions. It specifically provided that the "minimum term shall be computed *after* allowing for" statutory good conduct deductions (emphasis supplied). St. 1955, c. 770, § 69. Thus, the statute unambiguously directed that the parole eligibility date be computed in the manner that the department and parole board currently compute it.

Section 133 was again amended, however, in 1965. This amendment established the one-third and two-thirds distinction for parole eligibility calculations. It also provided that *"the portion of a minimum sentence or sentences which a prisoner is required to serve before being eligible for a parole permit shall*, in each of the above instances, *be reduced* by the number of days allowed for blood donations as provided in section one hundred and twenty-nine A" (emphasis supplied). St. 1965, c. 764, § 1.[10] Thus, by express language in the amended § 133, the good time deductions were to be subtracted from the parole eligibility date. The prisoners argue that this language establishes that earned good time deductions are to be subtracted from the parole eligibility date, not from the minimum sentence. Given the subsequent history of the act, we think the prisoners are on the right track.

After the 1965 amendment, the crucial language changed once again to become:

---

[10]The blood donation good time credit vanished from the statutory scene with the enactment of St. 1989, c. 307.

"Notwithstanding clauses (*a*), (*b*) and (*c*) of this section, deductions shall be allowed for blood donations as provided in section one hundred and twenty-nine A, and deductions shall be allowed for time confined in a prison camp as provided in section one hundred and twenty-nine C, said deductions to reduce the term of imprisonment by computing said additional deductions and subtracting the same from the minimum term of sentence for release on parole as authorized by this section . . . ." St. 1969, c. 184.

Although amended again in 1979, the statute has essentially retained this language through to its present form. St. 1979, c. 266.[11]

3. *Comparison to related statutes.* We are not led to read § 133 differently by a consideration of the other sections providing earned good time credits. The department and the parole board make the argument that since § 129A and § 133 concern the same issue they must be read consistently. We do not dispute this proposition, see 2A Singer, Sutherland Statutory Construction § 51.02 (Sands 4th ed. 1984), but differ as to its application to the problem at hand. The department and the parole board point us to the 1960 amendment to § 129A which provides that the reduction of sentence due to blood donations "shall be applicable to the minimum sentence of the prisoner." St. 1960, c. 794. As "[t]he Legislature does not deliberately enact inconsistent provisions when it is cognizant of both provisions," we are to conclude that the Legislature "intended that one meaning apply to both statutes," i.e., that any deduction should come off the minimum sentence, not the parole eligibility date.

But that argument ignores the fundamental principle that when a new provision conflicts with a prior statute the new provision, as the last expression of the Legislature, controls.

---

[11]The 1979 amendment removed the words "of this section" from the initial clause. While other amendments to the statute were made, those amendments did not affect this clause. See St. 1971, c. 464; St. 1979, c. 266; St. 1986, c. 486.

2A Singer, Sutherland Statutory Construction, *supra.* As § 129C and § 129D track the language of § 133, as amended by St. 1969, c. 184, it is more reasonable to conclude that the Legislature intended that the earned good time deductions be subtracted from the parole eligibility date than to conclude it intended to deduct them from the minimum sentence.

4. *Policy considerations.* Finally, policy consideration also support the prisoners' interpretation of G. L. c. 127, §§ 129D and 133. Good time credits earned pursuant to § 129D are not subject to forfeiture. *Pina* v. *Superintendent, Massachusetts Correctional Inst., Walpole,* 376 Mass. 659, 662 n.1 (1978). *Burno* v. *Commissioner of Correction,* 399 Mass. at 116. The effect of the department's and the parole board's policy is to cause the forfeiture of the benefits of two-thirds of the credits for the one-third prisoner or one-third of the credits for the two-thirds prisoner. See note 8, *supra.* Under the prisoners' interpretation, the prisoners would get the benefits of *all* of their good time credits. This result better fits the prohibition of forfeiture of earned good time credits. In addition, the prisoners' interpretation avoids the anomaly referred to that results in the prisoners who have committed a more serious crime or who have committed a crime while on parole receiving a greater percentage of their good time credits than prisoners who have committed a less serious crime.

The judgment of dismissal is vacated, and a new judgment is to be entered declaring that the good time credits earned pursuant to G. L. c. 127, § 129D, are to be deducted from the parole eligibility date as calculated pursuant to G. L. c. 127, § 133, and that the department and the parole board shall recalculate the prisoners' parole eligibility dates accordingly.

*So ordered.*