SEAN S. PIGGOTT & others[1] *vs.* COMMISSIONER OF
CORRECTION.

No. 94-P-989.

Suffolk. December 1, 1995. - July 9, 1996.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Imprisonment,* Good conduct deductions, Parole. *Practice, Criminal,*
Sentence.

State prisoners who were serving sentences between September 1987 and
May 1993 and who were paroled and committed another unrelated
crime that resulted in revocation of that parole and a consecutive
sentence were not entitled to a retroactive grant of earned good time
credit with respect to the earlier sentence pursuant to an order entered
in a class action brought by inmates who demonstrated their rights were
violated by denial to them of certain earned good time credit during the
earlier time period. [681]

State prisoners who were serving sentences between September 1987 and
May 1993 and who then began serving an unrelated consecutive sentence
in any Massachusetts correctional facility were entitled to a retroactive
grant of earned good time credit with respect to the earlier sentence
pursuant to an order entered in a class action brought by inmates who
demonstrated their rights were violated by denial to them of certain
earned good time credit during the earlier time period; and the claims
were not moot because the earlier sentences had expired. [681-684]

State prisoners who were serving sentences between September 1987 and
May 1993 and who thereafter commenced serving unrelated consecutive
sentences out-of-State or in Federal institutions were not, for reasons of
sovereignty and comity, entitled to a retroactive grant of earned good
time credit with respect to the earlier sentence. [684]

The Commissioner of Correction properly and within the authority granted
by the provisions of G. L. c. 127, § 129D, as amended through St. 1989,
c. 321, exercised his discretion to deny all State prisoners earned good
time credit for participation in rehabilitative programs. [684-685]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 19, 1992.

[1]Christopher Harding, individually and on behalf of all other prisoners
similarly situated.

The case was heard by *Hiller B. Zobel,* J., and entry of final judgment was ordered by *George A. O'Toole, Jr.,* J.

*Barry Barkow* for the plaintiffs.

*Joel J. Berner* for the defendant.

GREENBERG, J. While incarcerated at Southeastern Correctional Center at Bridgewater (M.C.I., Bridgewater), prisoners Sean Piggott and Christopher Harding filed a complaint for declaratory relief in the Superior Court claiming that the defendant, the Commissioner of Correction (commissioner), unconstitutionally withheld good time credits earned by them for participation in programs under G. L. c. 127, § 129D.[2] They sought an award of earned good time credits which the commissioner had denied them on August 21, 1987, by depriving certain prisoners of eligibility for earned good time credits for participation in Alcoholics Anonymous (AA), Narcotics Anonymous (NA), and counseling programs.[3] The prisoners also sought a declaration that the commissioner's action violated their due process and equal protection rights under the Fourteenth Amendment to the United States Constitution and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights. After an answer was filed by the commissioner, cross motions for summary judgment were heard by a judge of the Superior Court. On January 14, 1993, he granted partial summary judgment in favor of the prisoners, holding that the commissioner's denial of earned good time credit to some State prisoners but not others violated art. 1 of the Declaration of Rights and the equal protection clause of the Federal Constitution.

On May 17, 1993, another Superior Court judge certified the case as a class action under Mass.R.Civ.P. 23, 365 Mass. 767 (1974), and ordered that "[u]pon submission of an affidavit by a State prisoner who alleges participation in AA, NA or counseling programs between September 1987 and May

---

[2]Section 129D provides for sentence deductions ("earned good time") separate from those contained in G. L. c. 127, §§ 129 & 129C ("statutory good time"). Section 129D allows up to two and one-half days per month for satisfactory completion of educational, vocational, and rehabilitative training programs. (Section 129 has been repealed by St. 1993, c. 432, § 10.)

[3]By 103 Code Mass. Regs. § 411.08 (1987), the commissioner directed superintendents of all State correctional facilities to stop awarding earned good time for these programs to all prisoners except those confined in pre-release facilities and certain houses of correction.

1993 and who was incarcerated between September 1987 and May 1993 [Piggott time] *under the same term of imprisonment that is now being served,* whether comprised of a single sentence or two or more sentences being served concurrently *or otherwise,* and upon [the commissioner's] reviewing such prisoner's records, defendant shall retroactively award . . . earned good time for program participation . . . between September 1987 and May 1993" (emphasis added). We shall refer to those sentences in our opinion as "Piggott time sentences." The matter was remanded to the commissioner for compliance.

A dispute arose concerning the scope of relief accorded by the court's order.[4] The commissioner granted relief to prisoners still serving the same sentence on May 25, 1993, as they were during the Piggott time. However, he denied retroactive awards of earned good time to those prisoners who had completed their original Piggott time sentences by May 25, 1993, and were now serving consecutive sentences for crimes: (1) committed while on parole; (2) not eligible for statutory good time; (3) subject to a mandatory minimum term of imprisonment; or (4) punishable by confinement in a different correctional institution, such as a county house of correction, Federal penitentiary, or out-of-State prison.

Aggrieved by the commissioner's failure to award full retroactive relief, the prisoners then returned to court. After a hearing, a judge of the Superior Court ruled that the commissioner correctly denied relief. The judge ordered entry of judgment on April 7, 1994. The prisoners now appeal.

We hold that there was error affecting those parts of the judgment that excluded certain current Massachusetts State and county prisoners, who had finished serving their original Piggott time sentence and are currently serving consecutive sentences, from receiving earned good time credits: in particular, those prisoners whose sentences (1) follow directly from and after any preceding sentence; and (2) were imposed for crimes committed before incarceration on the earlier Piggott time sentence. The judgment is affirmed, however, with respect specifically to prisoners now serving consecutive sentences for crimes committed after incarceration on the earlier Piggott time sentence or who are confined in a Federal or

---

[4]Both sides had asked the court for clarification of the order, which was denied.

out-of-State institution. And in all other respects, the judgment is affirmed.

We turn now to the merits of the appeal, analyzing the four categories the prisoners claim were mistakenly excluded from receiving earned good time credits. In evaluating the proper scope of relief, judges are guided by twin principles: prisoners should, where possible, not be required to serve "dead time," but have no right to bank time served against future offenses. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 396 (1977).

1. *Crimes committed while on parole.* First, the prisoners claim that those prisoners who had served a sentence during the Piggott time, were paroled from that sentence, and committed another unrelated crime that resulted in revocation of that parole, are entitled to retroactive relief on their initial sentence. They ask that the wrongfully withheld earned good time credits be applied to their initial Piggott time sentence so that they would have begun serving their parole violation sentence at an earlier date.

We start with the proposition that earned good time credits pursuant to G. L. c. 127, § 129D, cannot be forfeited and are intended to reduce the maximum period of a prisoner's actual confinement. *Burno* v. *Commissioner of Correction*, 399 Mass. 111, 122 (1987); *Connery* v. *Commissioner of Correction*, 33 Mass. App. Ct. 253, 261 (1992), *S.C.*, 414 Mass. 1009 (1993). However, it does not follow from such an entitlement that a prisoner who violates a condition of parole by committing another crime is entitled to retroactive relief. *Burno* v. *Commissioner of Correction*, 399 Mass. at 124-125; *Cordeiro* v. *Commissioner of Correction*, 37 Mass. App. Ct. 690, 692-693 (1994). Where "the maximum aspect of the (first sentence) against which credit is now claimed [comes] into consideration only as a result of the plaintiff's criminality while on parole," awarding relief for that criminality offends common sense. *Cordeiro* v. *Commissioner of Correction*, 37 Mass. App. Ct. at 692-693. Therefore, any prisoner now serving a consecutive sentence for a crime committed while on parole from his original sentence is not entitled to a retroactive award of earned good time credit derived from the original sentence on the consecutive sentence. See *Cordeiro* v. *Commissioner of Correction*, 37 Mass. App. Ct. at 692-693.

2. *Crimes not eligible for statutory good time or subject to a*

*mandatory minimum sentence.* Next, the prisoners contend that those prisoners serving a consecutive sentence for a crime not eligible for statutory good time or that is subject to a mandatory minimum term of imprisonment were unfairly denied retroactive relief. They argue that by denying them retroactive relief on completed sentences, both categories of prisoners have been forced to serve "dead time" on those sentences. Put more succinctly, had the commissioner correctly allocated deductions during their initial sentences (i.e., given the prisoners the earned good time credits to which they were entitled), they would have begun serving their consecutive sentences at an earlier date, thereby advancing their ultimate prison discharge date.

The commissioner's position is that these claims are moot because the sentences upon which the prisoners claim credits have been completed. The suggestion that those prisoners have forfeited their § 129D credits on that basis ignores the obvious: they are currently imprisoned and their terms have been extended due to the commissioner's wrongful denial of earned good time credits. Contrast *M.C.* v. *Commissioner of Correction*, 399 Mass. 909, 911 (1987). We conclude that those prisoners serving consecutive sentences in Massachusetts correctional facilities are entitled to retroactive relief so long as the consecutive sentence is for a crime committed prior to incarceration on the Piggott time sentence.

While there appears to be no Massachusetts case which has ruled on the point, we may reason by analogy from cases involving sentences voided as a result of appellate review. The *Manning* Court considered whether a prisoner was entitled to receive credit under a subsequent criminal sentence for time served under another sentence which was later vacated. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387 (1977). Even though the second sentence was not imposed until the defendant had begun serving his initial albeit erroneous sentence, the court granted relief. In doing so, the court cautioned against the injustice of requiring prisoners to serve dead time and stated that "[l]iberty is of immeasurable value . . . ." *Id.* at 394. Similarly, credit has been given for time served to a subsequent sentence where the initial sentence was later declared void or voidable. See *Brown* v. *Commissioner of Correction*, 336 Mass. 718 (1958); *Croteau, petitioner*, 353 Mass. 736 (1968); *Lynch, petitioner*, 379 Mass. 757 (1980).

Although in *Cordeiro,* 37 Mass. App. Ct. at 692, we acknowledged the lack of "authority permitting credits earned, but not claimed, during an earlier sentence to be applied so as to reduce a subsequent sentence, either directly or indirectly by recalculation of the earlier sentence," the case at bar is distinguishable. In *Cordeiro,* we rejected reducing the subsequent sentence with earned good time credits from a previous sentence where the subsequent sentence was for a crime committed *after* incarceration on the sentence in which the good time credits were earned. Here, we are dealing with crimes committed *prior* to incarceration on sentences in which the good time credits were earned.

Therefore, only those prisoners whose consecutive sentences took effect "from and after" the expiration of the Piggott time sentence and are for crimes committed before their incarceration on the Piggott time sentence may receive retroactive awards of good time credits. Prisoners paroled or otherwise released into the community are not entitled to apply their earned good time credit to a subsequent offense.

The commissioner predicts that revising the discharge dates on the earlier completed sentences would create a computational nightmare. We recognize the difficulty inherent in fashioning relief in this type of situation. However, the commissioner has already done this for some prisoners. In accordance with the court's May 17 order, the commissioner distributed affidavit forms to prisoners to determine who was entitled to relief. In processing the affidavits, the commissioner awarded retroactive relief to prisoners still serving the same sentence on May 25, 1993, as they were during the Piggott time. Because some affidavits of eligible prisoners were unaccounted for, the commissioner distributed a second set of affidavits on June 29, 1993. When these affidavits were received, the commissioner awarded retroactive relief to those prisoners entitled to Piggott time credits whose prior sentences had not been completed as of May 25, 1993, but had been completed by June 29, by back-dating the discharge dates from the earlier sentences. Where, as here, it was error to withhold earned good time credits in the first instance, fairness requires that those prisoners now serving a consecutive sentence for crimes subject to a mandatory minimum receive the credit they earned pursuant to section 129D. Accordingly, the discharge dates should be revised for prisoners

serving consecutive sentences subject to a mandatory minimum so long as there was no hiatus between the sentences, and the consecutive mandatory minimum sentence is for a crime committed prior to the Piggott time sentence.

3. *Crimes punishable by confinement in a different correctional institution.* Based upon the foregoing analysis, fairness dictates that current Massachusetts State and county prisoners whose consecutive sentences are being served in a different Massachusetts State or county correctional facility receive their earned good time credit. For consecutive Federal or out-of-State sentences, however, principles of dual sovereignty and comity militate against granting relief. *Oses* v. *United States,* 833 F. Supp. 49, 51-52, 54-55 (D. Mass. 1993) (prisoner who served dead time on State sentence not entitled to credit on Federal sentence). Compare *Beauchamp* v. *Murphy,* 37 F.3d 700, 705 (1st Cir. 1994), cert. denied, 115 S. Ct. 1365 (1995) ("Massachusetts is entitled to shape its own sentences and, within very broad limits, is entitled to insist that a sentence of so many years means *years served in a Massachusetts prison*"). See G. L. c. 124, § 1(*e*), and G. L. c. 127, §§ 129 and 129D; see also *Commonwealth* v. *Aquafresca,* 11 Mass. App. Ct. 975, 977 (1981) ("We perceive no obligation (as matter of fairness or otherwise) to give [prisoners] credit for time served in jail prior to the commencement of [an] unrelated [out-of-State sentence], as a result solely of the crimes which led to that sentence").

4. *Failure to award good time credit for rehabilitative programs.* Finally, the prisoners assail as arbitrary the commissioner's decision, subsequent to the Piggott order, to deny earned good time credit to all prisoners for AA, NA and counseling programs.[5] The regulation of which the prisoners complain was created pursuant to statutory authority. See G. L. c. 127, § 129D.[6] That statute unambiguously gives the commissioner discretion whether or not to award earned good time credits for participation in rehabilitative programs such

[5]See note 3, *supra.*

[6]"For . . . satisfactory performance of said inmates in any other program or activity which the superintendent of the institution shall deem valuable to said prisoner's rehabilitation, the commissioner *may* grant, . . . a further deduction of sentence of not more than two and one-half days per program or activity for each month. . ." (emphasis added). G. L. c. 127, § 129D, as amended through St. 1989, c. 321.

as those in issue here. See *State Bd. of Retirement* v. *Boston Retirement Bd.*, 391 Mass. 92, 94 (1984); see also *Hewitt* v. *Helms*, 459 U.S. 460, 471-472 (1983). There is no error.

The judgment is reversed insofar as it fails to order retroactive relief for all current Massachusetts State and county prisoners erroneously denied earned good time credit during the Piggott time that are now serving a consecutive sentence under G. L. c. 279, § 8A (from and after sentences), in a Massachusetts facility for crimes committed before their incarceration on the Piggott time sentence. The case is remanded for injunctive relief to be granted in accordance with this opinion. In all other respects, the judgment is affirmed.

*So ordered.*