Gershengorn, J.
Plaintiff, Mark Stacy, brought an action against defendants claiming they violated the ex post facto and equal protection[2] clauses of the Federal and State Constitutions by changing the earned good time credit policy of the main building of Billerica House of Corrections (“Billerica”). Defendants now move for summary judgment on the ex post facto claim on the grounds that the revised good time credit policy does not increase the punishment imposed on Stacy for crimes he committed prior to the revision. For the reasons set forth below, defendants’ motion for summary judgment is allowed.
BACKGROUND
The following facts are undisputed. In 1989, in the class action suit Doyle v. McGonigle, Civil No. 89-1519 (Middlesex Super. Ct. 1989), the court found the overcrowding at Billerica to be unconstitutional. In response to this finding, the parties signed a “Memorandum of Understanding,” which placed a cap on the number of inmates allowed to be held in each building at Billerica. To achieve the caps, a new earned good time credit policy was adopted which allowed inmates to earn sentence deductions of up to 12.5 days per month for participation in three categories: work, education and treatment. The inmates could earn a maximum of 7.5 days of credit in each category per month up to the 12.5 days overall maximum.
In April 1995, a disturbance occurred in Billerica’s main building, resulting in a need for tightened security and safety measures. A “two-platoon" system was instituted whereby half of the inmate population was permitted outside of their cells in the morning and the other half was allowed out in the afternoon. Thus, inmates had less of an opportunity to earn good time credits since they had less time outside of their cells. Additionally, in May 1995, the earned good time policy was revised, thereby reducing the maximum days of credit in each category per month to 5.0 (“May 1995 revised policy”). However, the overall 12.5 days per month maximum was maintained. This revised policy applied only to inmates in the main building.
Stacy committed numerous crimes in February 1995 and was sentenced in March 1995. Thus, at the times Stacy committed the crimes and was sentenced, the old good time policy applied wherein he could earn up to 7.5 days per month in each category up to the 12.5 days per month overall maximum. Subsequently, during Stacy’s incarceration at Billerica’s main building, the May 1995 revised policy was adopted, thereby reducing his opportunity to earn good time credit days in each category to 5 days per month. No where is it alleged that Stacy took part in the fight which resulted in the new restrictions placed on inmates in the main building.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue and that the moving party is entitled to judgment as a matter of law. *724 Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the moving party does not have the burden of proof at trial, the movant may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion ...” Pederson, 404 Mass. at 17. The non-moving party, however, cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Stacy contends that defendants violated the ex post facto clause by reducing his opportunity to earn good time credits under G.L.c. 127, §129D, thus increasing the length of his sentence. He argues that the May 1995 revised policy limiting the amount of credits a prisoner is eligible to earn in each category and the elimination of certain programs makes it impossible for him to earn 12.5 days per month, thereby creating an ex post facto violation.[3] This argument is without merit.
The ex post facto clause bars the retroactive application of newly enacted legislation imposing more onerous penalties for the same offense or making criminal an act that was not punishable at the time it was committed. Weaver v. Graham, 450 U.S. 31 (1981); Piper v. Perrin, 560 F.Sup. 253, 258 (D.N.H. 1983). See Colder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798). For purposes of this motion, the Court will assume that the May 1995 revised policy constituted a regulation possessing the full force and effect of law and, therefore, subject to the ex post facto prohibition. In the present case, Stacy remained eligible to earn the same number of good time credits under the May 1995 revised policy (12.5 days/month) as he was eligible to earn under the prior policy. The reduction of the amount of days per month credits allowed per category does not affect Stacy’s maximum or minimum prison sentence, the point at which he is eligible for parole, or his mandatory release date, since he is still eligible to earn the maximum of 12.5 days of credit per month. The fact that Stacy, under the May 1995 revised policy, must select programs from three categories rather than two categories to earn the maximum allowable amount of good time credits per month[4] does not make the present policy more onerous.
Moreover, it is well-established that there is no constitutional right to earn good time credits; at most, there is a right to participate in available programs. Jackson v. Hogan, 388 Mass. 376, 379 (1983). Even the right to participate in available programs may be “constitutionally restricted by rules stemming from valid penological concerns such as security and order.” Id. The May 1995 revised policy did not affect Stacy’s eligibility to earn good time credits. It merely revised the method by which he obtained the maximum amount of credits. The fact that the two-platoon system and the May 1995 revised policy may have interacted to preclude Stacy from achieving the 12.5 credits maximum does not make the new policy ex post facto. The two-platoon system arose from valid penological concerns of security as they directly resulted from the disturbance which occurred in the main building of Billerica. Therefore, neither the May 1995 revised policy nor the two-platoon system violated the ex post facto clause.
Stacy argues that Weaver, 450 U.S. 31, stands for the proposition that a new law which makes it more difficult to earn “gain time” credits violates the ex post facto clause as it is more burdensome. Thus, Stacy claims that the May 1995 revised policy violates the ex post facto prohibition since it makes it harder for him to “max-out” with 12.-5 days credit. Stacy’s reliance on Weaver, however, is misplaced as Weaver involves a reduction in the amount of statutory “gain time” available to inmates and, thus, changes the maximum amount of credits per month awarded to each prisoner.[5] These credits are automatically applied if a prisoner commits no infraction of the prison rules or the laws of the state and diligently performs the duties assigned to him or her. Unlike Weaver, the case at bar concerns a change in the manner by which an inmate is eligible for earned good time credits and not a reduction in the opportunity to earn early release since the 12.5 days maximum is still available.
Furthermore, Piggot v. Comm’r of Correc., 40 Mass.App.Ct. 678 (1996), and Lynce v. Mathis, 117 S.Ct. 891 (1997), cited by Stacy, are distinguishable from the present case. The Court in Piggot held that the denial of good time credits for participation in certain programs which previously afforded inmates good time credits is unconstitutional as it imposes harsher penalties on inmates. Piggot, 40 Mass.App.Ct. 678. By denying credits to inmates who took these programs, the inmates’ sentences were lengthened. Id. Stacy, on the other hand, does not assert that he was denied credit for courses he took because a statute or policy removed them from the good time credit allowance. Stacy has never taken the courses for which he believes he should be credited. Rather, he claims that the new policy, forcing him to consider courses or programs in all three categories, combined with the lack of opportunity to participate in particular programs, makes it impossible for him to earn the maximum of 12.5 days credits per month.
*725 The disputed statute in Lynce retroactively can-celled all provisional credits awarded to inmates, thereby lengthening the inmates’ sentences and even resulting in the rearrest of some inmates who had been released. Lynce, 117 S.Ct. 891. In the case at bar, the revised policy does not deny credits already earned or awarded nor prohibit a prisoner from obtaining the maximum amount of credits available. Instead, the policy only requires that inmates find new ways of earning the 12.5 days per month credit allowed.
ORDER
For the foregoing reasons, it is ORDERED that defendant’s motion for summary judgment be ALLOWED on plaintiffs ex post facto claim.

 The equal protection issue is still pending and is not addressed by this Order.

 A separate question exists as to whether the May 1995 revised policy violates the consent decree filed in response to Doyle v. McGonigle, Civil No. 89-1519 (Middlesex Super. Ct. 1989); however, this is not alleged by defendant and, thus, is not addressed by this Court.

 Prisoners can earn good time credits in three categories: work, education and treatment. Under the old policy, an inmate could “max-out” using only two categories since he-could earn up to 7.5 days credit in each. The May 1995 revised policy requires an inmate to participate in programs in all three categories to be eligible to “max-out” since he only could earn 5 days credit in each.

 The old “gain time” statute granted inmates with certain deductions as follows: 5 days per month off the first and second years of an inmate’s sentence, 10 days per month off the third and forth years, and 15 days per month for the fifth and all succeeding years. The new statute reduced those amounts to 3 days per month, 6 days per month, and 9 days per month, respectively.